Filed 11/13/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PRIMA DONNA DEVELOPMENT CORPORATION,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant and Respondent. | H045379<br>(Santa Clara County<br> Super. Ct. No. 1-15-CV-276708) |

Plaintiff and appellant Prima Donna Development Corporation appeals from a judgment confirming an arbitration award in favor of defendant Wells Fargo Bank, N.A. Prima Donna challenges both the order compelling arbitration and the denial of its motion to vacate the arbitration award. We conclude the trial court properly ordered the matter to arbitration and confirmed the arbitration award. Accordingly, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND[1]

Appellant Prima Donna Development Corporation (Prima Donna) is a California corporation that develops, builds, and manages hotel properties in California and Oregon.

---

[1] We take these facts primarily from the arbitration award and the parties' filings submitted in the trial court in conjunction with Wells Fargo's motion to compel arbitration. Although Prima Donna's briefing in this court makes clear that it does not agree with all of the factual determinations made by the arbitrator, Prima Donna does not contest them on appeal.

Michael Chiu is Prima Donna's president.  In March 2007, Chiu opened several commercial bank accounts on behalf of Prima Donna at respondent Wells Fargo Bank, N.A. (Wells Fargo).

As part of the paperwork for opening the accounts, Chiu either signed or agreed to be bound by a number of agreements.  One of these agreements, the commercial account agreement, contained an arbitration agreement, which stated, "Except as stated in 'No Waiver of Self-Help or Provisional Remedies' below,[2] Company and Bank agree, at Company's or Bank's request, to submit to binding arbitration all claims, disputes and controversies, between or among Company and Bank . . . whether in tort, contract or otherwise arising out of or relating in any way to Company's Account(s) and/or Service(s) and their negotiation, execution, administration, modification, substitution, formation, inducement, enforcement, default or termination."

Under a section entitled "Governing Rules," the arbitration agreement stated "Any arbitration proceeding will (i) proceed in a location selected by the American Arbitration Association ('AAA') in the state whose laws govern Company's Account; (ii) be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between Company and Bank; and (iii) be conducted by the AAA, or such other administrator as Company and Bank shall mutually agree upon, in accordance with the AAA's commercial dispute resolution procedures."

The arbitration agreement also provided that "[t]he arbitrator[] shall resolve all Disputes in accordance with the substantive law of the state whose laws govern

---

[2] This provision states "This arbitration requirement does not limit the right of either party to (i) exercise self-help remedies including setoff or (ii) obtain provisional or ancillary remedies such as injunctive relief or attachment, before, during or after the pendency of any arbitration proceeding.  This exclusion does not constitute a waiver of the right or obligation of either party to submit any Dispute to arbitration or reference hereunder, including those arising from the exercise of the actions detailed in (i) and (ii) of this subsection."

Company's Account and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award."

In opening the commercial bank accounts for Prima Donna at Wells Fargo, Chiu also signed a wire transfer services security procedures agreement (wire transfer agreement) for each account he opened. In each wire transfer agreement, Prima Donna "agree[d] that it is bound by any Order, whether or not authorized, issued in its name and accepted by Bank in compliance with the security procedure selected by Company."[3] The wire transfer agreement specified security procedures for transfers initiated by "voice-initiated transfers" (presumably by phone) and security procedures applicable to transfers initiated through the Internet.

For voice-initiated wire transfers, the wire transfer agreement provided that Wells Fargo would call Chiu by telephone to verify the order and, if Wells Fargo was unable to reach Chiu, it would not process the wire transfer. Wells Fargo also allowed for wire transfers initiated through the Internet, using Wells Fargo's "commercial electronic office portal" (CEO). In the case of an Internet transfer, a "company administrator" selected by Prima Donna could initiate a wire transfer through CEO. The wires at issue in this appeal were initiated through Wells Fargo's CEO portal.

As described in the arbitration award, for wire transfer orders placed through CEO, "[t]he Bank gives each Company Administrator a token card and a PIN. The token card generates a random security code every minute, which combines with the PIN to create a unique Passcode. This Passcode is used by the Bank to authenticate the identity of the Company and/or person initiating the request. The purpose of all this is to verify that the person initiating the transfer is authorized by the Company to do so. Unlike the

---

[3] The wire transfer agreement defined "Orders" as "any instructions to transfer funds by wire from accounts Company maintain[s]" at Wells Fargo.

3

procedure for transfer initiated by phone, this procedure does not require that the specific transfer be confirmed by a phone call to Chiu."

The arbitrator found "[t]he procedure for voice-initiated transfers also protects [Prima Donna] against a Company Administrator who initiates such transfers against Chiu's wishes because Chiu would have to approve the transfer. Because the CEO procedure only verifies the identity of the Company Administrator, it does not protect Chiu against a Company Administrator who initiates transfers without Chiu's permission. However, the Bank also allows for 'Dual Control.' If the customer elects Dual Control, then the Company must name two Administrators, and any transaction initiated by one must be approved by the other before it goes through. Had Chiu elected to use Dual Control with himself as one of the Company Administrators, he would presumably have been notified before the transfers and would have declined to approve them. Prima Donna elected not to have Dual Control."

In January 2014, at the time of the disputed wire transfers, Prima Donna's financial controller, Thuy Tran, served as a company administrator for Prima Donna under the wire transfer agreement. In January 2014, while Chiu was out of the country, his Yahoo e-mail account was apparently hacked. On January 23, 27, and 28, Tran received a series of e-mails from a person whom she believed was Chiu, instructing her to wire funds from Prima Donna's Wells Fargo bank accounts to bank accounts overseas. Pursuant to these e-mails, Tran requested (through the CEO portal) that Wells Fargo make a number of wire transfers from Prima Donna's Wells Fargo bank accounts. When Chiu returned to work on January 29, he told Tran that he had not requested that she transfer this money. Although Prima Donna called Wells Fargo to report the fraud, most of the money had already been transferred and could not be recovered. Prima Donna did not recover $638,400 that had been wired from its Wells Fargo accounts.

Prima Donna filed suit in the Santa Clara County Superior Court (trial court) against Wells Fargo alleging two claims under Commercial Code section 11202[4] titled "Breach of Statutory Duty." In the first cause of action, Prima Donna alleged that Wells Fargo failed to follow the security procedures set out in the wire transfer agreement. (§ 11202, subd. (b)(i)-(ii).) Therefore, the wire transfers were "ineffective and/or unenforceable" under section 11202, and Wells Fargo had the obligation of returning the amount of the wire transfers to Prima Donna pursuant to section 11204. In the second cause of action, Prima Donna alleged that "Wells Fargo did not employ 'reasonable commercial standards of fair dealing' in its acceptance and processing" of the wire transfers within the meaning of section 11202. (§ 11202, subd. (c).) Therefore, Wells Fargo had the obligation of returning the amount of the wire transfers to Prima Donna pursuant to section 11204.

Wells Fargo filed a motion to compel arbitration pursuant to the arbitration agreement contained in the commercial account agreement. Wells Fargo stated that in the arbitration agreement the parties agreed to arbitrate all "disputes arising between them." In its motion, Wells Fargo asserted that, "[b]y its terms" the arbitration agreement is governed by the Federal Arbitration Act (FAA). Wells Fargo argued that the trial court should order arbitration because Prima Donna and Wells Fargo had entered into an enforceable arbitration agreement, Prima Donna's claims fell within the scope of the arbitration agreement, and public policy favors arbitration. In addition to requesting that the trial court order the parties to arbitration, Wells Fargo also requested that the trial court stay the civil action pending arbitration.

Prima Donna filed an opposition to Wells Fargo's motion to compel arbitration. Prima Donna did not dispute the applicability of the arbitration agreement but argued that "fraudulent wire transfers involving financial institutions in California are strictly

_____
[4] Unspecified statutory references are to the Commercial Code.

5

controlled by [the] California Uniform Commercial Code ('CUCC') section 11101 *et seq*. In interpreting [CUCC] 11101 et seq., the California Supreme Court has been unequivocal about the exclusive nature of the statutory scheme controlling the procedures, rights, obligations and remedies available to the parties. (*Zengen*, *Inc. v. Comerica Bank* (2007) 41 Cal.4th 239.) Common law causes of action such as negligence or breach of contract or the attempt to try and enforce a single contractual provision between the parties such as an arbitration clause are specifically inapplicable under CUCC section 11101 *et seq*."

Prima Donna asserted that, because the Commercial Code and the California Supreme Court's decision in *Zengen* require that fraudulent wire transfers be addressed only through the statutory provisions of Commercial Code section 11101 et seq., the arbitration agreement was not enforceable as to Prima Donna's claims against Wells Fargo.

In its opposition to the motion to compel arbitration, Prima Donna did not argue that the arbitration agreement was unconscionable. Nor did Prima Donna reference the formation of the arbitration agreement, except to note in passing that Chiu had not separately signed or "acknowledged" the arbitration clause. Prima Donna did not argue in the trial court that the court should not enforce the arbitration agreement because of the circumstances under which the parties entered into it.

The trial court conducted a hearing on Wells Fargo's motion to compel arbitration and granted the motion. In its written order, the trial court stated "There is no reason given as to why an arbitrator cannot adjudicate a UCC claim. The fact that UCC provisions displace common law provisions and provide the law under which claims are analyzed (as *Zengen v. Comerica Bank* (2007) 41 Cal.4th 239 makes clear) is wholly unrelated to what type of fact finder can apply that law to this dispute." The trial court concluded, "There is no legitimate reason why this dispute must be heard by a Superior Court Judge in civil court rather than an arbitrator through binding arbitration. This

6

matter is to be arbitrated, and the pending civil action, including all discovery, shall be stayed until the conclusion of arbitration."

Prima Donna filed in this court a petition for writ of mandate challenging the order compelling arbitration, which this court summarily denied.

Wells Fargo and Prima Donna proceeded to an arbitration conducted through the AAA. The parties engaged in prehearing discovery. In the course of communications between the parties and the appointed arbitrator, Prima Donna's counsel wrote to the arbitrator expressing concern about conduct by Wells Fargo's counsel relating to discovery and stating that Chiu was "very concerned whether these proceedings have now been so contaminated by Wells Fargo's inappropriate conduct that he and [Prima Donna] ma[y] not be treated fairly and objectively in this arbitration before you."

The following day, the assigned arbitrator recused himself and resigned from the arbitration. The arbitrator wrote to counsel and stated, "A party to an arbitration should have complete confidence in the fairness and objectivity of the process and the arbitrator, in the overall integrity of the process, and confidence that each party will be treated fairly and objectively. In this case it appears that [Prima Donna] does not have that confidence. I do not reach or discuss the basis for and/or validity of [Prima Donna's] concerns, but, rather, accept that it has concerns. I deem those concerns sufficient to justify my recusal."

The AAA appointed retired Justice Christopher Cottle to conduct the arbitration. The parties continued to engage in discovery, including a contested proceeding after which the arbitrator granted Prima Donna's motion to compel production of documents, broadening the relevant discovery to discovery relating "to the relationship between Wells Fargo and Prima Donna, going back to the beginning of their relationship in 2007." The arbitrator subsequently conducted a three-day arbitration hearing, in which he heard testimony from seven witnesses and received a number of written exhibits into evidence.

7

The arbitrator issued an eight-page written award finding in favor of Wells Fargo and concluding under the principles set out in sections 11201 et seq. that Wells Fargo was not liable for Prima Donna's loss from the January 2014 wire transfers. In the award, the arbitrator described the background of the dispute and made a number of factual findings. The arbitrator found that, at the time of the wire transfers, Tran had the authority to initiate wire transfers for Prima Donna's Wells Fargo bank accounts, either by phone or through Wells Fargo's Internet portal, CEO. The arbitrator also found that Tran had made the wire transfers pursuant to Wells Fargo's CEO portal, although Tran had called the phone number for CEO's customer service for assistance.

Turning to Prima Donna's claims against Wells Fargo, the arbitrator considered Prima Donna's contention (alleged in the first cause of action in its original complaint filed in the trial court) that Wells Fargo's security procedures were inadequate under section 11202, subdivision (b) (hereafter section 11202(b)). Examining the definition of "security procedure" under section 11201, the arbitrator observed that "[t]he term does not include a procedure for establishing that the customer is not being defrauded by a third party into making the transfer."[5]

Turning to Prima Donna's claims under section 11202(b), the arbitrator reviewed the statutory language.[6] The arbitrator summarized section 11202(b) as providing that,

[5] Section 11201 provides, " 'Security procedure' means a procedure established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or canceling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, callback procedures, or similar security devices. Comparison of a signature on a payment order or communication with an authorized specimen signature of the customer is not by itself a security procedure."

[6] Section 11202(b) states, "If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against

8

even if a wire transfer order "is not actually authorized, the customer will be bound by it if the bank operated according to a security procedure and (1) the customer agreed to the procedure; (2) the procedure is commercially reasonable; and (3) the bank accepted the order in good faith and in compliance with the security procedure."

The arbitrator rejected Prima Donna's contention that Wells Fargo's method of processing wire transfer orders placed through the Internet was not commercially reasonable within the meaning of section 11202(b). "[T]he security procedure is not required to be a commercially reasonable method of protecting the customer against being fraudulently induced into making a wire transfer to a third party. It is to be a commercially reasonable method of 'providing security against unauthorized payment orders.' The procedure here is a commercially reasonable method of ensuring that the payment order is actually coming from the customer. Whether it is a commercially reasonable method of ensuring that the customer is not being defrauded by a third party is irrelevant because the bank is not required to protect the customer from third parties who might fraudulently induce the customer to transfer money to them."

The arbitrator also rejected Prima Donna's argument (advanced in the second cause of action in its original complaint filed in the trial court) that Wells Fargo's Internet wire transfer order system through CEO was not commercially reasonable within the meaning of section 11202, subdivision (c) (hereafter section 11202(c)) because it did not ensure that the requested wire transfers were authorized by Chiu, Prima Donna's president. The arbitrator noted that Chiu had declined to adopt available security procedures, including the "Dual Control" procedure for transfers initiated through CEO.

unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. The bank is not required to follow an instruction that violates a written agreement with the customer or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted."

9

Had Chiu elected to set up the dual control feature and named himself as one of the company administrators, any transaction initiated by Tran would have had to be approved by Chiu before Wells Fargo fulfilled the wire order. Therefore, the arbitrator reasoned, Wells Fargo complied with section 11202(c).[7]

The arbitrator concluded, "Because Prima Donna initiated the [wire] transfers, and Wells Fargo followed the agreed procedures to ensure that the transfer was actually initiated by Prima Donna, Wells Fargo is not liable for the loss." The arbitration award stated "Prima Donna is awarded nothing against Wells Fargo. [¶] The Administrative fees and expenses of the AAA and the Compensation and expenses of the Arbitrator are to be borne as incurred by the parties. [¶] This award determines all issues submitted by the parties in this arbitration, and any claim or contention not expressly decided, is denied."

The arbitrator simultaneously issued a four-page written order deciding certain factual issues, which Prima Donna had contended the arbitrator should decide in its favor because of Wells Fargo's failure (in Prima Donna's view) to produce certain items in discovery. The arbitrator rejected Prima Donna's requests.

A few weeks after the arbitrator issued his order and award, Prima Donna submitted a letter to the arbitrator. In the letter, Prima Donna's counsel stated, "[i]n agreeing to have you preside as arbitrator, Prima Donna . . . understood and expected that you would be applying the current law applicable to California Commercial Code (CCC) 11202 et seq." Prima Donna's counsel asserted that the arbitrator omitted any analysis under section 11202(b) "whether the security procedure was followed in 'good

---

[7] "A security procedure is deemed to be commercially reasonable if (i) the security procedure was chosen by the customer after the bank offered, and the customer refused, a security procedure that was commercially reasonable for that customer, and (ii) the customer expressly agreed in writing to be bound by any payment order, whether or not authorized, issued in its name and accepted by the bank in compliance with the security procedure chosen by the customer." (§ 11202(c).)

10

faith.' " Prima Donna noted "[t]hat element was disputed primarily because of Wells Fargo's failure to respond appropriately when it had actual notice of the potentially fraudulent nature of the first wire transfer payment order" through the " 'risk' score" that Wells Fargo assigned the transaction.

Prima Donna stated, "[a]lthough we have no expectations that you will change your decision, we do expect you to fulfill your obligation for which you were retained in this matter. Given this, it is respectfully requested that you complete the legal analysis required by statute . . . and supplement your decision with a complete analysis of 'good faith' as stated in CCC [section] 11202(b)." Wells Fargo opposed Prima Donna's request, arguing that any analysis of " ' "good faith" ' " was unnecessary under the facts of the case and the applicable law.

The arbitrator subsequently issued an order referencing this letter and making the following determinations: "The Award was a Final Award. Furthermore, the legal analysis in the Award, as it relates to the facts and circumstances of this case, was sufficient. [Prima Donna's] request is denied."

Prima Donna filed in the trial court a petition to vacate the arbitration award under Code of Civil Procedure section 1286.2, subdivision (a)(4), on the ground that the arbitrator exceeded his powers. Prima Donna argued that the arbitrator did not have the authority to decide the dispute because section 11101 et seq. do not permit arbitration of disputes concerning electronic wire transfers. Prima Donna also contended that the arbitrator did not determine all the questions presented to him and, therefore, the award should be vacated under Code of Civil Procedure section 1286.2, subdivision (a)(5). In particular, Prima Donna cited the arbitrator's failure to "determine whether Wells Fargo processed the unauthorize[d] payment orders in good faith." Wells Fargo opposed Prima Donna's petition to vacate the arbitration award.

The trial court held a hearing on Prima Donna's petition to vacate and, following the hearing, issued a written order denying it. In its order, the trial court noted that,

11

although Prima Donna's arguments in the petition with respect to the arbitrator's jurisdiction "don't completely mirror the arguments they made in opposing the 2015 Motion to Compel [Arbitration], there is significant overlap and the issue has already been adjudicated. [Prima Donna]'s current argument that the matter should not have proceeded to arbitration appears to be tantamount to a motion for reconsideration of a ruling made in 2015. This is not a proper basis for granting the relief sought in the present motion."

In addition, the trial court rejected Prima Donna's argument that the arbitrator did not determine all the questions presented to him. "Justice Cottle's award is thorough and detailed and [Prima Donna] has not met its burden in showing that Justice Cottle failed to address any of the issues to be determined in the arbitration." The trial court denied Prima Donna's petition to vacate the arbitration award, and it confirmed the arbitration award. The trial court subsequently issued a judgment confirming the arbitration award and ordered that Prima Donna "recover nothing" from Wells Fargo. Prima Donna timely appealed the trial court's judgment confirming the arbitration award and the trial court's 2015 order compelling arbitration.

## II. DISCUSSION

In its challenge to the order compelling arbitration, Prima Donna acknowledges that the FAA governs the arbitration agreement at issue here but argues that the agreement is unconscionable and therefore unenforceable under the FAA's " 'savings clause.' " Prima Donna's unconscionability argument with respect to the order compelling arbitration rests primarily on two grounds. First, Prima Donna argues that the arbitration agreement violates public policy because it denies Prima Donna the statutory protections of the Commercial Code provisions applicable to wire transfers. In particular, Prima Donna cites the arbitrator's authority to decide the matter according to general principles of law and equity and, consequently, to disregard the relevant statutory provisions. Prima Donna also asserts the arbitration agreement is unconscionable

12

because it requires that Prima Donna waive the "right to trial by jury," which Prima Donna contends section 11202 guarantees.

Turning to the trial court's order denying the petition to vacate the arbitration award, Prima Donna argues that the arbitrator exceeded his powers by failing to address its claims that Wells Fargo did not act in good faith, as required by section 11202(b).

Wells Fargo, in turn, asserts that Prima Donna forfeited any claim of unconscionability by failing to raise it in the trial court. Wells Fargo also contends that Prima Donna's arguments cannot be reconciled with the FAA and case law construing the doctrine of unconscionability under California law. As to Prima Donna's arguments with respect to the trial court's order denying its petition to vacate the arbitration award, Wells Fargo maintains that Prima Donna forfeited this argument by failing to raise it in the trial court and, in any event, the arbitrator's award did not contravene a statutory command sufficient to justify judicial review of the award.

We first examine Prima Donna's contention that the trial court erred in granting Wells Fargo's motion to compel arbitration. We then consider Prima Donna's challenge to the trial court's order denying its petition to vacate the arbitration award.

This appeal turns on the law applicable to arbitration (and particularly on the FAA), the general contract defense of unconscionability, and California statutes governing wire transfers. We first discuss these principles before examining the merits of Prima Donna's claims.

A. *Background Legal Principles*

1. Arbitration

Both California and federal law strongly favor arbitration. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24.) Two features of arbitration bear particular relevance to this appeal. First and most obviously, arbitration involves a waiver of the right to a jury trial. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714.) Second, parties

who agree to arbitrate generally also accept, as a feature of arbitration itself, strict limits on the scope of judicial review. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9–10 (*Moncharsh*).)

The parties do not dispute that the FAA governs the arbitration agreement at issue in this appeal.[8] By its terms, the arbitration agreement provided that "[a]ny arbitration proceeding will . . . be governed by the Federal Arbitration Act (Title 9 of the United States Code)." The FAA requires that courts enforce arbitration agreements according to their terms. (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 (*Volt*).) No other provision in the arbitration agreement suggests the parties intended to incorporate any other body of arbitration law, and therefore the FAA controls our interpretation of the agreement. (See *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1121–1122.)

2. The Federal Arbitration Act

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 (*Concepcion*).) Under the FAA, courts must "place arbitration agreements on an equal footing with other contracts." (*Ibid.*) The FAA "pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' " (*Volt*, *supra*, 489 U.S. at p. 478.)

Therefore, under the FAA states may not "prohibit[] outright" the arbitration of a particular type of claim. (*Concepcion*, *supra*, 563 U.S. at p. 341.) In addition, the FAA prevents states "from mandating or promoting procedures incompatible with arbitration." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 366

---

[8] Although Wells Fargo did not argue in the trial court that the FAA preempted California law, it did assert in the trial court that the arbitration agreement is governed by the FAA. We therefore conclude that Wells Fargo did not forfeit its arguments based upon the applicability of the FAA.

(*Iskanian*).) The FAA precludes states from "requir[ing] a procedure that interferes with fundamental attributes of arbitration, 'even if it is desirable for unrelated reasons.' " (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 923 (*Sanchez*).) This rule "applies equally to requirements imposed by statute or judicial rule." (*Id*. at p. 924.)

A party does not waive statutory rights by agreeing to arbitrate them. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628.) Therefore, claims for statutory damages are "fully arbitrable," even if the claim "incidentally vindicates important public interests." (*Broughton v. Cigna Healthplans of California* (1999) 21 Cal.4th 1066, 1084; *Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220, 232.) Arbitrators, like courts, are empowered to interpret statutes. (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 210.)

However, the FAA "does not require enforcement of a provision in an arbitration agreement that 'forbid[s] the assertion of certain statutory rights' or that 'eliminates . . . [the] right to pursue [a] statutory remedy.' " (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 963, quoting *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 236 (*Italian Colors*).) In addition, the FAA contains a "saving clause," which "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " (*Concepcion*, *supra*, 563 U.S. at p. 339.) However, "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue," do not fall within the FAA's saving clause and thus do not serve to invalidate an arbitration agreement. (*Ibid*.)

Under the FAA, a generally applicable contract defense such as unconscionability may invalidate an arbitration agreement if the defense is enforced evenhandedly and does

15

not interfere "with fundamental attributes of arbitration." (*Concepcion*, *supra*, 563 U.S. at p. 344; *Sanchez, supra,* 61 Cal.4th at p. 906.) "Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions." (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687.) "[A] court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.' " (*Concepcion*, at p. 341.) The FAA preempts a state rule "not only when it facially discriminates against arbitration but also when it disfavors arbitration as applied." (*Sanchez*, at p. 924.)

### 3. Unconscionability

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*OTO*, *supra*, 8 Cal.5th at p. 125.) Under the FAA, the "doctrine's application to arbitration agreements must rely on the same principles that govern all contracts." (*Ibid.*)

The defense of unconscionability is "inherently fact-specific." (*OTO*, *supra*, 8 Cal.5th at p. 138.) The party asserting the defense of unconscionability bears the burden of proving its applicability. (*Id.* at p. 126.) Under the FAA, unconscionability claims must be resolved by the trial court before enforcing an arbitration agreement. (*Id.* at p. 138.) In resolving a claim of unconscionability, a court's inquiry is whether the contract provision was unconscionable at the time it was made. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133–1134 (*Sonic*).)

The doctrine of unconscionability consists of procedural and substantive components. " 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or

16

one-sided.' [Citation.] [¶] Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' " (*OTO*, *supra*, 8 Cal.5th at p. 125.)

For procedural unconscionability, the "pertinent question" is "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*OTO*, *supra*, 8 Cal.5th at p. 126.) The buyer's sophistication is a relevant factor in this analysis. (*Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 767–768.) Furthermore, a claim of procedural unconscionability based on " 'oppression' may be defeated if the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable." (*Id.* at p. 768.)

"Substantive unconscionability examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' " (*OTO*, *supra*, 8 Cal.5th at pp. 129–130.) A provision is not "unfairly one-sided merely because one side is, as a practical matter, more likely to make use of it." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1248, fn. 4.)

    4. Wire Transfers

The California Supreme Court's leading decision on the law in California governing wire transfers is *Zengen Inc. v. Comerica Bank*, *supra*, 41 Cal. 4th 239 (*Zengen*). Prima Donna's arguments in this appeal rely primarily on the principles articulated in *Zengen*. As described by the California Supreme Court in that case, " 'The 1990 Legislature enacted Article 4A of the Uniform Commercial Code as Division 11 of

17

the California Uniform Commercial Code (U.C.C. 11101 et seq.), entitled "Funds Transfers." ' (4 Witkin, Summary of Cal. Law (10th ed. 2005) Negotiable Instruments, § 132, p. 505.)" (*Zengen*, at p. 247.)

" 'A typical funds transfer involves a large amount of money, multimillion-dollar transactions being common. Most transactions are completed in a single day; thus, funds transfers are efficient substitutes for payments made by delivery of paper instruments. An additional feature is low cost, in that transfers involving millions of dollars can be made for a few dollars. However, in the event a problem arises, risk of loss to banks may be high. Thus, "a major policy issue in the drafting of Article 4A is that of determining how risk of loss is to be allocated given the price structure in the industry." ' " (*Zengen*, *supra*, 41 Cal.4th at p. 253, italics omitted.)

Article 4A (codified as sections 11101 et seq.) allocates this risk of loss. "Under section 11202, subdivision (b), if a bank accepts an unauthorized payment order in good faith, it is not liable if a commercially reasonable security procedure was in place, and the bank followed it and any other applicable written agreement or instruction of the customer." (*Zengen*, *supra*, 41 Cal.4th at p. 250.)

If a bank fails to comply with sections 11202 or 11203,[9] section 11204 provides that the bank must refund money sent by the non-compliant payment orders. "Section

_____

[9] Section 11203 states "(a) If an accepted payment order is not, under subdivision (a) of Section 11202, an authorized order of a customer identified as sender, but is effective as an order of the customer pursuant to subdivision (b) of Section 11202, the following rules apply: [¶] (1) By express written agreement, the receiving bank may limit the extent to which it is entitled to enforce or retain payment of the payment order. [¶] (2) The receiving bank is not entitled to enforce or retain payment of the payment order if the customer proves that the order was not caused, directly or indirectly, by a person (i) entrusted at any time with duties to act for the customer with respect to payment orders or the security procedure, or (ii) who obtained access to transmitting facilities of the customer or who obtained, from a source controlled by the customer and without authority of the receiving bank, information facilitating breach of the security procedure, regardless of how the information was obtained or whether the customer was at fault. Information includes any access device, computer software, or the like. [¶] (b)

18

11204, subdivision (a), provides: 'If a receiving bank accepts a payment order issued in the name of its customer as sender which is (i) not authorized and not effective as the order of the customer under Section 11202, or (ii) not enforceable, in whole or in part, against the customer under Section 11203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment.' " (*Zengen*, *supra*, 41 Cal.4th at p. 250, fn. omitted.)

In *Zengen,* the California Supreme Court confronted the question whether these statutory provisions displace common law remedies, such as breach of contract. (*Zengen*, *supra*, 41 Cal.4th at p. 251.) In answering this question, the California Supreme Court cited with approval commentary to the Uniform Commercial Code: " 'Funds transfers involve competing interests—those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.' " (*Id.* at p. 252, italics omitted.)

The California Supreme Court concluded in *Zengen* that these provisions preempt certain common law state claims. " '[D]ivision 11 provides that common law causes of action based on allegedly unauthorized funds transfers are preempted in two specific areas: (1) where the common law claims would create rights, duties, or liabilities inconsistent with division 11; and (2) where the circumstances giving rise to the common

---

This section applies to amendments of payment orders to the same extent it applies to payment orders."

19

law claims are specifically covered by the provisions of division 11.' " (*Zengen*, *supra*, 41 Cal.4th at p. 253.)

The court summarized the plaintiff's common law claims in *Zengen* as "[t]he Bank should not have accepted and executed the fraudulent payment orders" (*Zengen*, *supra*, 41 Cal.4th at p. 254) and concluded they were preempted. " 'This case is about unauthorized wire funds transfers. Zengen's non-California Uniform Commercial Code causes of action are based solely on the analysis prescribed by division 11—that the Bank processed unauthorized payment orders. Because the California Uniform Commercial Code provides a remedy to Zengen under these circumstances, it preempts the common law causes of action alleged in the Zengen's complaint.' " (*Id.* at p. 255.) *Zengen* did not address the application of division 11 in the context of an arbitration agreement.

Before addressing Prima Donna's challenge to the arbitrator's award, we turn first to Prima Donna's challenge to the trial court's order compelling arbitration.

B. *The Order Compelling Arbitration*

The parties did not raise any issues of disputed facts in their filings related to Wells Fargo's motion to compel arbitration. Therefore, we apply de novo review to the trial court's order. (*Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 1448–1449.)

"A petition to compel arbitration based on a written arbitration agreement must be granted unless grounds exist to revoke the agreement. (Code Civ. Proc., §§ 1281, 1281.2, subd. (b).) An agreement to arbitrate, like any other contract, is subject to revocation if the agreement is unconscionable."[10] (*Carmona v. Lincoln Millennium Car Wash, Inc.*

_____

[10] Although Prima Donna contends that courts may refuse to enforce arbitration agreements based on "equitable principles," this broad statement is not supported by the relevant statutes or case law. "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (9 U.S.C. § 2; see also, Code Civ. Proc., § 1281.) In other words, under California law, as under federal law, an arbitration

20

(2014) 226 Cal.App.4th 74, 83 (*Carmona*).) Prima Donna contends the trial court should not have granted Wells Fargo's motion to compel arbitration, because the arbitration agreement here was unconscionable and therefore unenforceable.

According to Prima Donna, the arbitration agreement is substantively unconscionable because arbitration is "incompatible" with the principles of *Zengen* and section 11202. Prima Donna argues that, pursuant to *Zengen*, division 11 is the " 'exclusive means' " for determining liability for electronic funds transfers. Prima Donna asserts "It is fundamentally inequitable to permit a bank to specifically enforce the arbitration provision in a contract of adhesion when, under *Zengen*, its customer is unable to bring an action for breach of that contract or the bank's failure to meet its duty of care in performing it. Since doing so requires the customer to waive its statutory rights, the bank contract's arbitration provision, as applied to funds transfers, is unconscionable and thus violates public policy."

In addition to *Zengen,* Prima Donna relies on section 11202, subdivision (f) (hereafter section 11202(f)), which states, "[e]xcept as provided in this section and in paragraph (1) of subdivision (a) of Section 11203,[11] rights and obligations arising under this section or Section 11203 may not be varied by agreement." Prima Donna also cites to section 11202, subdivision (c) (hereafter section 11202(c)), which provides the "[c]ommercial reasonableness of a security procedure is a question of law."

Relying on these statutory provisions, Prima Donna argues that its arbitration agreement with Wells Fargo is substantively unconscionable because it is incompatible with this statutory scheme in that the arbitrator was not required to apply division 11 to resolve the dispute. Prima Donna also maintains the arbitration agreement is unconscionable because it required the waiver of Prima Donna's right to jury trial, which

---

agreement may only be invalidated for the same reasons as other contracts." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98, fn. omitted.)

[11] See footnote 9, *ante*.

Prima Donna asserts is non-waivable under section 11202. In making this argument, Prima Donna relies on the reference in section 11202(c) to a "question of law," which it contends necessarily implies that the remaining elements of section 11202 are factual questions to be decided by a jury.

With respect to procedural unconscionability, Prima Donna asserts that "there can be no real dispute that the Commercial Account Agreements were adhesion contracts in the sense that they were standard contracts imposed by the party with superior bargaining strength." Prima Donna also maintains that it "had no opportunity" to negotiate the agreement containing the arbitration provision. Prima Donna states on appeal, "[n]or does Wells Fargo contend that [Prima Donna] could have opted out of the arbitration agreement or that Mr. Chiu could have negotiated an account agreement without an arbitration agreement."

Wells Fargo asserts that Prima Donna forfeited these unconscionability arguments by failing to raise them in the trial court. Wells Fargo notes, for example, that had Prima Donna raised the unconscionability arguments in the trial court, Wells Fargo could have presented evidence of Prima Donna's "sophistication and bargaining power" and the alternative banking options Prima Donna could have chosen "had it found [Wells Fargo's] Arbitration Agreement unpalatable." Prima Donna counters that, in the absence of a material factual dispute, unconscionability is a question of law that may be raised for the first time on appeal.

With respect to Prima Donna's claim of procedural unconscionability, we agree with Wells Fargo that, by failing to raise the issue in the trial court, Prima Donna has forfeited it as a defense to the arbitration agreement. Procedural unconscionability is "inherently fact-specific." (*OTO*, *supra*, 8 Cal.5th at p. 138.) Contrary to Prima Donna's contention, the parties here dispute the relevant facts, including Chiu's sophistication and Prima Donna's option of selecting a different bank if it objected to the terms of the arbitration agreement.

22

Prima Donna—not Wells Fargo—bore the burden of asserting and proving the unconscionability defense in its opposition to Wells Fargo's motion to compel arbitration. (*OTO*, *supra*, 8 Cal.5th at p. 126.) By failing to do so in the trial court when the court was considering whether to enforce the arbitration agreement, Prima Donna has forfeited any claim of procedural unconscionability, including any claim that arbitration was "impos[ed]" on it, it was "surprise[d]" by the arbitration provision, or it "involuntarily forfeited" its statutory rights.

Turning to substantive unconscionability, we do not agree that Prima Donna has forfeited this contention. We agree with Prima Donna that the arguments that underlie its claim that the arbitration agreement was substantively unconscionable are in essence the same as those it asserted in the trial court in its opposition to the motion to compel arbitration. In addition, these arguments rely on pure issues of law that we may address for the first time on appeal. (*Carmona*, *supra*, 226 Cal.App.4th at p. 89, fn. 6.)

Prima Donna asserts that the arbitration agreement is substantively unconscionable because the arbitrator was not constrained to apply the statutory provisions in division 11, which the California Supreme Court has agreed are "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." (*Zengen*, *supra*, 41 Cal.4th at p. 252, italics omitted.) However, the premise of Prima Donna's challenge—that the arbitrator would not apply these provisions in reaching his decision—is inconsistent with the text of the arbitration agreement itself.

The choice of law provision in the arbitration agreement provided that the arbitrator "shall resolve all Disputes in accordance with the substantive law of the state whose laws govern Company's Account and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award." There is no dispute that the governing state law here was the law of California, and the arbitrator's award, as discussed above, makes

23

clear that he applied division 11, including sections 11202 and 11203, to resolve the dispute.

Therefore, we reject Prima Donna's argument that the arbitration agreement was substantively unconscionable because the arbitrator would not necessarily decide the dispute by applying California law. We also disagree with Prima Donna's contention, to the extent Prima Donna makes it, that the arbitration agreement prevented Prima Donna from asserting its statutory rights or eliminated its right to pursue a statutory remedy. (See *Italian Colors*, *supra*, 570 U.S. at p. 236.)

Prima Donna's argument that the arbitration agreement was substantively unconscionable because it denied Prima Donna its "right to trial by jury" of claims under section 11202 is equally unavailing. It is far from clear that section 11202—in and of itself—guarantees a right to trial by jury in its single reference to a "question of law." (§ 11202(c).) However, even if we were to interpret the statute in this way, this provision would itself be preempted by the FAA, which prevents states from prohibiting the arbitration of certain claims or "from mandating or promoting procedures incompatible with arbitration." (*Iskanian*, *supra*, 59 Cal.4th at p. 366; *Concepcion*, *supra*, 563 U.S. at p. 341.) Requiring that a claim be resolved by a jury (and, therefore, rejecting the possibility that it could be decided by an arbitrator) is plainly incompatible with arbitration.

To the extent that Prima Donna asserts that the arbitration agreement was substantively unconscionable because of the limited nature of judicial review of arbitration decisions, this argument, too, is preempted by the FAA. The limited nature of judicial review of arbitration agreements stems from the expectation "that the arbitrator's decision will be both binding and final." (*Moncharsh*, *supra*, 3 Cal.4th at p. 9.) The FAA precludes courts from "impos[ing] unconscionability rules that interfere with arbitral efficiency." (*Sonic*, *supra*, 57 Cal.4th at p. 1141.) Therefore any

24

unconscionability doctrine based on the limited scope of judicial review would not invalidate an arbitration agreement to which the FAA applies.

For these reasons, we conclude the trial court did not err in its order compelling arbitration of Prima Donna's claims against Wells Fargo.

C. *The Order Denying the Petition to Vacate the Arbitration Award*

Prima Donna asserts that the trial court erred when it denied Prima Donna's petition to vacate the arbitration award under Code of Civil Procedure section 1286.2, subdivision (a)(4), on the ground that the arbitrator exceeded his powers.[12] Prima Donna asserts that the arbitrator exceeded his powers by failing to address Prima Donna's contention that Wells Fargo did not act in "good faith" within the meaning of section 11202(b) when the bank accepted Tran's orders for wire transfers, even though Wells Fargo's own internal risk assessment scores raised concerns about the orders.

Prima Donna acknowledges that courts do not normally review arbitrators' decisions for legal error. However, Prima Donna contends that its claims fall within the "narrow exception" announced in *Moncharsh*, *supra*, 3 Cal.4th at page 32, which permits judicial review where "granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." (*Ibid.*)[13]

We review de novo whether the arbitrator exceeded his powers such that the arbitration award should have been vacated. (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.) " '[E]valuating a challenge to an arbitration award is a two-step process—first the court must determine whether the award is reviewable, and only if

---

[12] Code of Civil Procedure section 1286.2, subdivision (a)(4), provides, "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following  [¶] . . . The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."
[13] We agree with Prima Donna that its argument on appeal with respect to the trial court's order denying its petition to vacate is substantially similar (although not identical) to those it made in the trial court. Moreover, it raises a pure question of law, and therefore we decline to deem the argument forfeited.

review is appropriate does the court consider whether the award should be upheld.' " (*Branches Neighborhood Corp. v. CalAtlantic Group, Inc*. (2018) 26 Cal.App.5th 743, 751 (*Branches Neighborhood*).)

"Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties. [Citation.] This is true even where, as here, an arbitration agreement requires an arbitrator to rule on the basis of relevant law, rather than on principles of equity and justice." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).) Furthermore, " '[a]rbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error.' " (*Id*. at p. 917.)

However, "[a]rbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey*, *supra*, 60 Cal.4th at p. 916.) "This departure from the general rule applies only in 'limited and exceptional circumstances.' (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.)" (*Branches Neighborhood, supra,* 26 Cal.App.5th at p. 751.) These circumstances are limited to situations "where an arbitrator's decision has the effect of violating a party's statutory rights or well-defined public policies—particularly those rights and policies governing the conduct of the arbitration itself." (*Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 765.)

We conclude that Prima Donna's attack on the arbitrator's failure to explicitly address its contention that Wells Fargo did not act in "good faith" does not encompass such an exceptional circumstance. "The exceptions to the limits on review of awards protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368.) No such error appears here.

26

Prima Donna was allowed to bring its claims against Wells Fargo and was not prevented "from receiving a review on the merits." (See *Richey*, *supra*, 60 Cal.4th at p. 918.) The arbitration process allowed for discovery (including motions to compel discovery), an arbitrator who voluntarily recused himself after Prima Donna expressed concern about his impartiality, a multi-day arbitration hearing, written discovery, evidentiary rulings, and a reasoned, written award that applied the relevant principles of California law, including sections 11202 and 11203. In our view, Prima Donna's claim about the arbitrator's failure to address "good faith" amounts only to a contention that the arbitrator made a legal error—a question not subject to judicial review. (*Moncharsh*, *supra*, 3 Cal.4th at p. 33.) In light of this conclusion, we do not further address the merits of Prima Donna's contention.

For these reasons, the trial court did not err in denying Prima Donna's petition to vacate the arbitration award.

## III. DISPOSITION

The order compelling arbitration and judgment confirming the arbitration award are affirmed. Respondent is entitled to its costs on appeal.

27

_____
DANNER, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
GROVER, J.

**H045379**
*Prima Donna Development Corporation v. Wells Fargo Bank, N.A.*

| Trial Court: | Santa Clara County Superior Court Superior Court No. 1-15-CV-276708 |
|---|---|
| Trial Judge: | Hon. Maureen A. Folan |
| Counsel for Plaintiff/Appellant Prima Donna Development Corporation | Dincel Law Group Kim Omer Dincel |
| Counsel for Defendant/Respondent Wells Fargo Bank, N.A. | Severson & Werson Jan T. Chilton Marquis I. Wraight |

**H045379**
*Prima Donna Development Corporation v. Wells Fargo Bank, N.A.*